**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| TRINA RUSS, individually, and as Trustee for the Heirs and Next of Kin of Andrew Russ, <br><br> Plaintiff, <br><br> v. <br><br> ECKLUND LOGISTICS, INC., KLE EQUIPMENT LEASING, LLC, and SHANE THOMAS MICHAELS, individually and jointly, <br><br> Defendants. | Case No. _____ <br><br> Jury Trial Demanded <br><br><br> **COMPLAINT** |

Plaintiff Trina Russ, in her own right and as Trustee for the Heirs and Next of Kin of Andrew Russ, through her Complaint, and pursuant to Minn. Stat. § 573.02, brings this action against Defendants Ecklund Logistics, Inc., KLE Equipment Leasing LLC, and Shane Thomas Michaels, and hereby alleges as follows:

## THE PARTIES

1.      Decedent Andrew "Drew" Russ was killed in a commercial motor-vehicle collision on June 13, 2019 caused by Defendants.

2.      Plaintiff Trina Russ is Wife and Trustee for the Heirs and Next of Kin of Andrew Russ, deceased, and is a citizen of Minnesota.

3.      Ms. Russ, as the appointed Trustee for the Heirs and Next of Kin of Andrew Russ, brings this action, in relevant part, pursuant to Minnesota's Wrongful Death statute, Minn. Stat. § 573.02 et seq. [1]

---

[1] The Order appointing Trina Russ is attached to this Complaint as **Exhibit A**.

1

4. Ms. Russ, as the surviving spouse of Andrew Russ, brings this action, individually, for her Loss of Consortium claim.

5. Defendant Ecklund Logistics, Inc. ("Ecklund Logistics") is a Wisconsin corporation with its headquarters at 6991 Highway 76, Neenah, Wisconsin, 54956. Its registered agent is Kirk L. Ecklund.

6. Ecklund Logistics operates commercial motor vehicles transporting cargo in interstate commerce and is registered with the United States Department of Transportation, USDOT Number 1098480.

7. Defendant KLE Equipment Leasing LLC ("KLE Equipment") is a Wisconsin corporation sharing a headquarters at 6991 Highway 76, Neenah, Wisconsin, 54956 with Ecklund Logistics, and sharing the same registered agent, Kirk L. Ecklund.

8. KLE Equipment (using the initials of Kirk L. Ecklund) is an alter-ego of Ecklund Logistics used to purchase, hold, and lease equipment to Ecklund Logistics, including the semi-tractor and trailer which were involved in the commercial vehicle collision that killed Andrew Russ on June 13, 2019.

9. Defendant Shane Thomas Michaels ("STM") is a resident of the State of Wisconsin at 2900 Hall Avenue, Lower Marinette, Wisconsin, 54143 and holds a Class A Wisconsin Commercial Driver's License.

10. At the time of the fatal collision, STM was in the course and scope of his employment for Ecklund Logistics and was operating the 2014 Freightliner semi-tractor (VIN number 3AKJGLD64ESFN9055) hauling a loaded[2] EAST Manufacturing semi-trailer (VIN

---

[2] Plaintiff does not currently know what load was being hauled, to where, and for whom, but will seek that information in discovery.

number 1E1H5Y28-5SRJ18066), which were registered to Ecklund Logistics, and owned by KLE Equipment.

## JURISDICTION AND VENUE

11.     This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

12.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the causes of action occurred in Minnesota, and pursuant to 28 U.S.C. § 1391(c), Defendants are subject to Personal Jurisdiction in the District of Minnesota.

## FACTUAL ALLEGATIONS

13.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

14.     Andrew Russ, 33, was killed in a commercial motor-vehicle collision on June 13, 2019 while commuting from his family home in Woodbury, Minnesota to his job at Schwing America in White Bear Lake, Minnesota.

15.     In the moments leading up to the collision, Mr. Russ was driving in his 2015 Nissan Altima on Interstate 94 westbound to exit north onto Interstate 494 on the route to his office. As Mr. Russ approached the exit to Interstate 494 northbound, without any warning, his car was struck from behind by the semi tractor-trailer combination registered to Ecklund Logistics, owned by KLE Equipment, and operated by STM.

16.     The force of the impact from the tractor-trailer (Unit 1, below) caused a chain-reaction crash, propelling Mr. Russ's vehicle (Unit 2, below) forward into the rear of a Chevy

3

Equinox (Unit 3, below) driven by Bonnie B. Rizzardi; and Ms. Rizzardi's Chevy Equinox was

propelled forward into the backend of the the Lexus (Unit 4, below) driven by Colene B. Erickson.



17. As a result of the impacts form the collision, Mr. Russ's vehicle was crushed, as

depicted below:



18.    The Ecklund Logistics tractor also sustained heavy front-end damage in the collision, as depicted below:



19.    Following the collision, first responders found Mr. Russ in his Nissan. He was unresponsive with signs of significant traumatic injuries.

20.    First responders extracted Mr. Russ from his vehicle, put him into an ambulance, and drove him to Regions Hospital in St. Paul, Minnesota for emergency medical treatment.

21.    While on the way to Regions Hospital the paramedic team aboard the ambulance attempted to revive Mr. Russ. He had no pulse or signs of any cardiac activity when they arrived at Regions Hospital.

22.    At Regions Hospital the emergency department team continued efforts to revive Mr. Russ, but his injuries from the crash were catastrophic and proved fatal.

23.    Mr. Russ was pronounced dead at 7:23 a.m.[3]

---

[3] Mr. Russ's death meets the tort threshold set forth under Minn. Stat. § 65B.51, Subd. 3.

24.     At the time of his death, Regions Hospital emergency department staff observed a moment of silence for him.

25.     After coordination with Mr. Russ's family, Trina Russ authorized donation of Mr. Russ's tissue and eyes.

26.     According to Ramsey County Medical Examiner Michael B. McGee, Mr. Russ's official cause of death is "Closed Head Trauma" resulting from the motor-vehicle collision.

27.     He is survived by his wife Trina Russ; their two children, M.R. and G.R.; parents, James and Patricia Russ; siblings, Joshua Russ, Brianna Hoffman, and Dustin Russ; parents-in-law, Steve and Joyce Lawrence; and sisters-in-law, Leah Traxler and Kari Grand.



**Andrew and Trina Russ and Children**

28.     Mr. Russ graduated from Bemidji High School and from the University of Wisconsin-Madison with a degree in Mechanical Engineering. At the time of his death he worked at Schwing America as an Engineering Manager. He took great pride in his work and was passionate about forming meaningful relationships and mentoring. He enjoyed golfing, playing softball, and the outdoors.

29.     His obituary states that, "Above all else, he loved being a husband and father. He was the definition of super dad. There was no parenting feat he couldn't tackle. His children were

the light of his life. He was lucky enough to marry his best friend and soulmate and they loved

each other perfectly. His big smile and vibrant personality will be missed by all who knew him."

**Andrew Steven 'Drew' Russ Obituary, Ex. E.**

## CONDUCT LEADING TO THE FATAL CRASH

### *Failure to Keep a Proper Lookout, Unsafe Speed for the Conditions,*
### *Unsafe Following Distance*

30.     At the scene of the crash on June 13, 2019, the Minnesota State Patrol noted in the

Minnesota Motor Vehicle Crash Report that **STM "had just completed a lane change into the**

**right lane and did not see traffic slowing"** before he crashed into Mr. Russ. **Minnesota**

**Department of Public Safety Motor Vehicle Crash Report, Ex. D, pg. 6.**

31.     To obtain and hold a Commercial Driver's License (CDL) in both Minnesota and

Wisconsin (such as the Class A CDL held by STM at the time of the collision) a professional

commercial motor vehicle operator is taught about the importance of keeping a proper lookout and

proper distance between their commercial vehicle and other traffic.

32.     Keeping a proper lookout and maintaining a proper distance is important because

stopping or changing lanes in commercial motor vehicles can take a lot of distance and knowing

what traffic is doing ahead and on all sides is very important. ***See* Wisconsin Commercial**

**Driver's Manual August 2018, Ex. B, pg. 43.** "Most good drivers look 12 to 15 seconds ahead.

That means looking ahead the distance you will travel in 12 to 15 seconds. At lower speeds that's

about one block. At highway speeds it's about a quarter of a mile. If you're not looking that far

ahead, you may have to stop too quickly or make quick lane changes. Looking 12 to 15 seconds

ahead doesn't mean not paying attention to things that are closer. Good drivers shift their attention

back and forth, near and far." ***Id. See also* 2018 Minnesota Commercial Driver's Manual, Ex.**

**C, pg. 2-10.**

33.     Commercial motor vehicle operators are also taught that of all the space around their vehicle, the space that they are driving into is most important. ***See* Wisconsin Commercial Driver's Manual August 2018, Ex. B, pg. 51; 2018 Minnesota Commercial Driver's Manual, Ex. C, pg. 2-16.** "You need space ahead in case you must suddenly stop . . . the vehicle that trucks and buses most often run into is the one in front of them. The most frequent cause is following too closely . . . [y]ou may crash if you are following too closely." ***Id.***

34.     Had STM kept a proper lookout, safe speed for the conditions, and safe following distance he would have avoided causing the fatal chain-reaction crash.

### *Distracted Driving by STM - Evidence of Handheld Device Use and Facebook Posting*

35.     Approximately 9 minutes before the fatal collision, at 6:46 a.m., STM had been online accessing his Facebook account and had added the following meme about speed dating:



8

36.     The Federal Motor Carrier Safety Regulations (FMCSRs) and Hazardous Materials Regulations (HMRs) ban handheld device use by professional commercial motor vehicle operators while driving:

a.   49 CFR Part 383, 384, 390, 391 and 392 of the FMCSRs and HMRs restricts the use of hand-held mobile telephones by drivers of commercial motor vehicles, implements disqualification sanctions, <u>and</u> prohibits motor carriers from requiring or allowing drivers of commercial motor vehicles to use hand-held mobile telephones. The use of hand-held mobile telephones means, "using at least one hand to hold a mobile telephone to conduct a voice communication"; "dialing a mobile telephone by pressing more than a single button"; or moving from a seated driving position while restrained by a seat belt to reach for a mobile telephone." ***See* Wisconsin Commercial Driver's Manual August 2018, Exhibit B, pp. 64-65. *See also* 2018 Minnesota Commercial Driver's Manual, Exhibit C, pg. 2-23.**

b.   Texting, reading, emailing, social media posts, and internet usage with an electronic device while driving 49 CFR Part 383, 384, 390, 391 and 392 of the FMCSRs and the HMRs restricts the use of hand-held mobile telephones by drivers of commercial motor vehicles; and 49 CFR Part 383, 384, 391 and 392 of the FMCSRs prohibits texting by commercial motor vehicle drivers while operating in interstate commerce; **and** prohibits motor carriers from requiring or allowing their drivers to engage in texting while driving, which includes manually entering text into, or reading text from, an electronic device, and includes, but is not limited to short message service, e-mailing, instant messaging, a command or request to access a World Wide Web page, or engaging in any other form of electronic text retrieval or entry, for present or future communication. Electronic device includes, but is not limited to, a cellular telephone; personal digital assistant; pager; computer; or any other device used to enter, write, send, receive, or read text. ***See* Wisconsin Commercial Driver's Manual August 2018, Ex. B, pp. 64-65; 2018 Minnesota Commercial Driver's Manual, Ex. C, pg. 2-24.**

37.     These prohibitions are vitally important to the safety of the motoring public and to prevent distracted driving by professional commercial motor vehicle operators who are hauling passengers and cargo.

38.     Research conducted by the Federal Motor Carrier Safety indicates that the odds of being involved in a safety-critical event (e.g., crash, near-crash, unintentional lane deviation) are 23.2 times greater for commercial motor vehicle operators using a handheld device than for those who are not.

39.     Additionally, at the time of the collision Minn. Stat. § 169.475 banned <u>any</u> driver from using a handheld device for reading or composing messages, emails, or accessing the internet or "other data that uses a commonly recognized electronic communications protocol."

### *Distracted Driving by STM - Evidence of Dual Ear Headphone Use While Driving*

40.     Additionally, after the collision, Colene B. Erickson, whose vehicle was hit from behind in the chain-reaction collision, observed that STM had a pair of dual-sided headphones hanging around his neck while he was standing on the side of the road at the crash scene.

41.     Using headphones while driving is distracting and takes a driver's attention off paying attention to the road and what is around them.

42.     At the time of the collision Minn. Stat. § 169.471, Subd. 2 banned the use of headphones used in both ears simultaneously while operating <u>any</u> motor vehicle.

### *STM's Criminal History - Evidencing Felony Conduct, a Lack of Adherence to Motor Vehicle Regulations, and Poor Judgment*

43.     STM's criminal background should have served as notice that STM did not possess the judgment and professionalism necessary to safety operate commercial vehicles before Ecklund Logistics chose to hire him, and before the fatal crash. STM's criminal background includes the following:

a.      A conviction for "Misdemeanor - Poss Mariju <2oz" from 4/1/2008 in Bell County, Texas;

b.      A Felony H conviction for "Theft-Movable Property > $5,000-$10,000" 943.20(a)(a) on 9/8/2010 in Marinette County, Wisconsin, Case Number 2010F000061, *State of Wisconsin vs. Shane Michael Thomas*, which resulted in incarceration and probation, among other criminal penalties;

c.      A conviction for "Vehicle Operator Fail/Wear SeatBelt" from 6/8/2012 in Winnebago County, Wisconsin, Case Number 2012TR009071;

d.      A conviction for "Misd A - Theft-Movable Property <=$2500" from 6/7/2013 in Fond du Lac County, Wisconsin, and which included a no contact order;

e.      A conviction for "Operating a motor vehicle w/o insurance" 344.62(a) from 1/26/2015 in Outagamie County, Wisconsin, Case Number 2015TR000592, *State of Wisconsin v. Shane Thomas Michaels,* which resulted in suspension of his driver's license on 6/19/15 for failure to pay the fine, and for which his driver's license was reinstated on 3/7/2016;

f.      A conviction for "Vehicle Passenger Fail to Wear Seat Belt" 347.48(2m)(d) from 2/2/2015 in Winnebago County, Wisconsin, Case Number 2015TR000976, *State of Wisconsin v. Shane Thomas Michaels*, for which the fine went unpaid and was entered as a judgment/lien on 5/6/2015.

44.     STM's conduct and history illustrates poor judgment, a disregard for the rules of the road, for the rights and safety of others, and a knowing indifference by Ecklund Logistics to STM's fitness to work as a professional commercial motor vehicle operator at the time of the fatal collision.

***STM's Unprofessionalism and Poor Judgment While Driving for Ecklund Logistics***

45.     In a disturbing irony, on June 6, 2019, just a week before the fatal collision on June 13, 2019, STM made the following Facebook post to his profile with a meme depicting a crashed semi-tractor trailer combination with a reference to falsifying driver logbooks before the DOT investigators arrived:



46.     STM's posting confirms that he lacked the judgment and professionalism to operate commercial motor vehicles at the time of the collision, and calls into question, combined with Ecklund Logistics past conduct (discussed below), whether STM and Ecklund Logistics obeyed federal hours of service requirements, and properly documented those hours in the months, weeks, and days, leading up to the crash.

47.     After the collision, STM continued adding social media postings which reflect a continued lack of professionalism, judgment, and a lack of empathy or understanding of the fact that he caused a fatal commercial motor vehicle crash. One posting from July 1, 2019 depicts a wrecked car, noting that it "Hit a house fly".



48.     Less than a month after the crash, on July 4, 2019, STM made another Facebook post, and reiterating his lack of judgment, professionalism, and empathy, about the "Truck Driver Bill of Rights" that said, "IF I STOPPED WORKING, YOUR DAILY LIFE WOULD STOP." The only life that ended in this crash is Mr. Russ, which occurred as a direct result of STM's conduct, Ecklund Logistics' choices to employ and retain STM as a commercial driver; and Ecklund Logistics and KLE Equipment's choice to entrust STM to operate the semi-tractor trailer rig involved in the fatal crash.



49.     Commercial driving is an honorable profession, and those who drive professionally and safely are a vital part of keeping American business and life going. However, STM's conduct

before, the morning of, and even after this avoidable collision show that STM lacked the judgment and professionalism necessary to be employed as a commercial vehicle driver.

50.     The evidence shows that STM chose not to act safely or professionally, and that those choices led to him endangering the motoring public and causing a chain-reaction collision which killed Andrew Russ.

51.     Ecklund Logistics' decision to hire STM, and to keep him employed despite his behavior, lack of judgment, and lack of professionalism; and to entrust him to operate the subject tractor-trailer which was involved the collision; shows a disregard for the rights and safety of others, including in hiring, training, retention, and supervision of its commercial drivers.

52.     KLE Equipment, as an alter-ego of Ecklund Logistics, operated in concert through its shared registered corporate office and shared registered agent, Kirk L. Ecklund; knew or should have known the same information known to Ecklund Logistics through its shared agent, corporate office, and business it conducted in concert with Ecklund Logistics.

53.     That information would include, but would not be limited to, company safety history; policies regarding hiring, training, supervision, and retention of employees; entrustment of vehicles and equipment to employees; driver qualification, safety, and professionalism; compliance with state and federal regulations; and vehicle and equipment ownership, leasing, insuring, inspection, and maintenance.

### Ecklund Logistics' past history of serious and fatal collisions, hours of service violations, and unsafe driving

54.     In 2016 a Nebraska jury awarded $2.25 million in a wrongful death claim in which the jury held Ecklund Logistics liable for causing a tractor-trailer collision that resulted in the wrongful death of a motorist, who left behind a spouse and child. ***See Basra, et al., vs. Ecklund Logistics, Inc.*, 8:16CV83, USDC Nebraska.**

14

55.     In that case evidence established that the Ecklund Logistics driver had violated his federal hours of service before the fatal collision, driving more than 78 hours over the maximum allowable time for an 8-day period, and had created inaccurate logbooks. The Ecklund Logistics driver was also on his phone at the time of the fatal crash.

56.     Another injury lawsuit against Ecklund Logistics arose from a December 8, 2014 collision in where an Ecklund Logistics tractor trailer improperly and illegally entered the lane of travel behind another motorist and collided with the rear and side of another motorist's vehicle. The other motorist sustained a serious neck injury and required surgery. The case was ultimately resolved while in litigation on March 27, 2017. ***See Zoda v. Ecklund Logistics, et al.*, 1:16-cv-02049-RWS, USDC Northern District of Georgia.**

57.     Other publicly available information suggests that hours of service violations are a pattern for Ecklund Logistics. A November 17, 2013 post by a former Ecklund Logistics driver on www.truckersreport.com states that Ecklund Logistics drivers were constantaly pressured to operate beyond the federally allowed hours of service:[4]



---

[4]https://www.thetruckersreport.com/truckingindustryforum/threads/ecklund-logistics-neenah-wi.231812/page-2

58.     Another posting on December 5, 2013, apparently posted on indeed.com by a former Ecklund driver noted that Ecklund Logistics "Believed breaking the law in the way of log books were normal."[5]



59.     In addition to being illegal, forcing drivers to operate beyond their federally allowed hours of service poses a significant danger to the motoring public in general, since drivers who operate over hours are more prone to fatigue and safety-critical events that can lead to commercial vehicle crashes.

60.     Other publicly available video evidence posted on YouTube calls into question Ecklund Logistic's hiring, training, supervision, retention, and company safety practices. A video posted on March 23, 2014 titled "ecklund logistics" depicts a semi driver driving too fast for the conditions, passing traffic in the left lane during white-out conditions **while simultaneously**

---

[5]https://www.indeed.com/cmp/Ecklund-
Logistics/reviews?fjobtitle=Over+the+Road+Truck+Driver

**filming on what appears to be his cell phone**. In fact the video was updated from an Android

phone on March 23, 2014.[6]



61.     STM's background and conduct leading up to the fatal collision in this case,

combined with Ecklund Logistics' other past history of serious and fatal collisions, and the other

publicly available information outlined above, confirms Ecklund Logistics' lack of safety and

professionalism as a motor carrier, including in its hiring, training, retention, and supervision of

---

[6] https://www.youtube.com/watch?v=x4wfLFFct74

its drivers, including STM, and confirms a pattern of disregard for the rights and safety of the motoring public in general, and to the Russ family in this case.

62.     Given the evidence of Ecklund Logistics' past history of serious and fatal collisions, and other unsafe, illegal, and unprofessional practices; and given that Ecklund Logistics decided to hire and retain STM despite his behavior, lack of judgment, and lack of professionalism; KLE Leasing's choice to lease equipment to Ecklund Logistics and to entrust Ecklund Logistics and STM with operating its semi-tractor and trailer involved in the collision evidences a shared disregard for the rights and safety of the motoring public in general, and to the Russ family in this case, by KLE Leasing, Ecklund Logistics, and STM.

## COUNT I

### Negligence
### (All Defendants)

63.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

64.     The collision and the death of Mr. Russ were caused as a direct and proximate result of the negligence, carelessness, and unlawful conduct of Defendants.

65.     As a result of the foregoing, Plaintiff and the Heirs and Next of Kin of Andrew Russ have incurred expenses for the funeral of decedent and have sustained pecuniary loss within the meaning of Minn. Stat. § 573.02 and were otherwise damaged in an amount not yet determined but for which Minnesota law provides a remedy.

## COUNT II

**Respondeat Superior**
**(Ecklund Logistics and STM)**

66.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

67.     STM was and at all times relevant hereto, operating a tractor-trailer under the authority and dispatch of Ecklund Logistics.

68.     STM was at the time of the collision, operating the Ecklund Logistics tractor-trailer combination in the course and scope of his employment with Ecklund Logistics.

69.     Ecklund Logistics is liable for all injuries and damages caused by STM under the doctrine of respondeat superior because an employer is vicariously liable for the torts of an employee committed within the course and scope of employment with the employer.

70.     As a direct and proximate result of the negligence, carelessness, and unlawful conduct of STM, and the injuries and wrongful death of Andrew Russ, Plaintiff was, and will continue to be deprived of the care, comfort, companionship, services, and consortium of her Husband.

71.     As a result of the foregoing, Plaintiff and the Heirs and Next of Kin of Andrew Russ have incurred expenses for the funeral of decedent and have sustained pecuniary loss within the meaning of Minn. Stat. § 573.02 and were otherwise damaged in an amount not yet determined but for which Minnesota law provides a remedy.

## COUNT IV

**Negligent Hiring, Training, Retention, Supervision, Entrustment
(Ecklund Logistics and KLE Equipment)**

72.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

73.     Ecklund Logistics and its alter-ego KLE Equipment owed the general public, including the Plaintiff, a duty to determine the qualifications of its employees including, but not limited to: (a) adequately evaluating applicants before hiring them as truck drivers; (b) adequately training and supervising these drivers; and (c) adequately evaluating these employees' job performance so as to discharge any incompetent or negligent employee before he or she injured the public and/or its property.

74.     Ecklund Logistics and KLE Equipment breached these duties to the general public, including the Plaintiff, by its negligent and careless hiring, training, supervising, and retaining of STM, and entrusting its registered/owned semi-tractor and trailer to STM, who was unqualified, and whose negligence, carelessness, and unlawful conduct led to the injuries and wrongful death of Andrew Russ.

75.     The carelessness, negligence, and unlawful conduct of Ecklund Logsitics and KLE Equipment were the direct cause of the collision which killed Andrew Russ.

76.     As a result of the foregoing, Plaintiff and the Heirs and Next of Kin of Andrew Russ have incurred expenses for the funeral of decedent and have sustained pecuniary loss within the meaning of Minn. Stat. § 573.02 and were otherwise damaged in an amount not yet determined but for which Minnesota law provides a remedy.

## COUNT V

**Negligent Entrustment**
**(KLE Equipment)**

77.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

78.     As the owner and lessor of the semi-tractor and trailer involved in the June 13, 2019 collision, KLE Equipment owed the general public, including the Plaintiff, a duty of reasonable care to determine the qualifications, professionalism, and safety of Ecklund Logistics and its commercial drivers in entrusting its equipment to Ecklund Logistics for use in interstate commercial trucking by its drivers.

79.     This includes the semi-tractor and trailer which were being "leased" from KLE Equipment to Ecklund Logsistics and operated by STM at the time of the fatal collision on June 13, 2019.

80.     Given that KLE Equipment is an alter-ego of Ecklund Logistics sharing the same corporate office and registered agent, Kirk L. Ecklund, KLE Equipment knew or should have known of Ecklund Logistics past driving history and STM's background and conduct leading up to the fatal collision in this case.

81.     Combined with Ecklund Logistics' other past history of serious and fatal collisions, and the other publicly available information outlined above,  and Ecklund Logistics' lack of safety and professionalism as a motor carrier, including in its hiring, training, supervision, and retention, of its drivers, including STM, and confirms a pattern of disregard for the rights and safety of the motoring public in general, and to the Russ family in this case, making it vicariously and directly liable.

82.     KLE Equipment breached those duties to the general-public, including Plaintiff, by entrusting its semi-tractor and trailer to Ecklund Logistics and STM.

83.     KLE's carelessness, negligence, and unlawful conduct were a direct cause of the collision which killed Andrew Russ.

84.     As a result of the foregoing, Plaintiff and the Heirs and Next of Kin of Andrew Russ have incurred expenses for the funeral of decedent and have sustained pecuniary loss within the meaning of Minn. Stat. § 573.02 and were otherwise damaged in an amount not yet determined but for which Minnesota law provides a remedy.

### COUNT VI

**Loss of Consortium**
**(On Behalf of Trina Russ Against All Defendants)**

85.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

86.     Plaintiff Trina Russ was entitled to the care, comfort, companionship, services, and consortium of her husband, Andrew Russ.

87.     As a direct result of the injuries and wrongful death of Andrew Russ, Plaintiff was, and will continue to be, deprived of the care, comfort, companionship, services, and consortium of her Husband.

88.     As a result of the foregoing, Plaintiff incurred damages related to the loss of Andrew Russ's services and companionship that she would have received in the usual course of married life, and other damages reasonable under the circumstances for which Minnesota law provides a remedy.

## ACTUAL DAMAGES

89.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

90.     As a direct and proximate result of the negligence, carelessness, and unlawful conduct of Defendants as alleged herein, Plaintiff has suffered injuries and damages. Plaintiff seeks compensation for Defendants for injuries including, but not limited to:

    a.   Pecuniary losses resulting from the death of Mr. Russ;

    b.   Loss of consortium damages incurred by Mrs. Russ;

    c.   Medical bills and expenses, including funeral expenses; and

    d.   Any and all such further relief to which Plaintiff may be entitled under the law.

## PRAYER FOR RELIEF

91.     Plaintiff incorporates by reference each and every allegation in this Complaint, as if fully set forth herein.

92.     Plaintiff, Trina Russ, in her own right and as Trustee on Behalf of the Heirs and Next of Kin of Andrew Russ, requests the Court to enter judgment against the Defendant Ecklund Logistics Defendant KLE Equipment LLC, and Defendant Shane Thomas Michaels, jointly and individually, for a reasonable amount greater than Ten Million and 00/100 ($10,000,000.00) Dollars, together with interest, costs, and disbursements incurred herein.

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.**

Dated: October 16, 2019

JOHNSON BECKER, PLLC

Michael K. Johnson (#0258696)
Jacob R. Jagdfeld (#0388549)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
612-436-1800
mjohnson@johnsonbecker.com
jjagdfeld@johnsonbecker.com

*ATTORNEYS FOR PLAINTIFF TRINA RUSS*


## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees and witness fees may be awarded pursuant to Minn. Stat. § 549.211, Subd. 1, to the parties against whom the allegations in this pleading are asserted.

Dated: October 16, 2019

JOHNSON BECKER, PLLC

Michael K. Johnson (#0258696)
Jacob R. Jagdfeld (#0388549)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
612-436-1800
mjohnson@johnsonbecker.com
jjagdfeld@johnsonbecker.com

*ATTORNEYS FOR PLAINTIFF TRINA RUSS*